483 So.2d 212 (1986)
Jimmy VALLIER, Plaintiff-Appellant,
v.
OILFIELD CONSTRUCTION COMPANY, INC., et al., Defendants-Appellees.
No. 84-999.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1986.
Writ Denied April 11, 1986.
*213 Pucheu, Pucheu & Pucheu, Jacque B. Pucheu, Jr., Eunice, for plaintiff-appellant.
Young & Burson, Terrance Hoychick, Eunice, Glusman, Moore & Wilkinson, Kirk A. Bergeron, Baton Rouge, for defendants-appellees.
Before DOMENGEAUX, LABORDE and KING, JJ.
KING, Judge.
The sole issue presented by this appeal is whether or not the trial court erred in granting a summary judgment in favor of a worker's compensation insurer in a suit brought by the plaintiff against a prospective employer and its insurer under LSA-R.S. 23:1361, an anti-discrimination statute of the Louisiana Worker's Compensation Law.
On March 9, 1983, Jimmy Vallier (hereinafter referred to as plaintiff) brought suit against Oilfield Construction Company, Inc., Oilfield Enterprises, Inc., and Oilfield Marine Inc. (all three defendants hereinafter referred to as Oilfield), under LSA-R.S. 23:1361, an anti-discrimination statute of the Louisiana Worker's Compensation Law, alleging that he was denied employment with Oilfield because of a prior worker's compensation claim. On April 4, 1984, *214 plaintiff filed a supplemental petition, adding United General Insurance Company (hereinafter referred to as United General) as a defendant to the suit, on the basis that United General had issued a worker's compensation insurance policy to Oilfield which was in effect on the date that Oilfield allegedly unlawfully failed to hire plaintiff. United General filed a Motion for Summary Judgment and attached as an exhibit to the motion a certified copy of the policy of insurance issued by it to Oilfield. The trial court granted the summary judgment and signed a judgment on August 21, 1984 dismissing with prejudice plaintiff's suit against United General. Plaintiff devolutively appeals and argues that the trial court erred in granting the summary judgment in favor of United General because (1) the terms of the policy issued by United General to Oilfield are ambiguous and do not exclude coverage for plaintiff's claim; and (2) in the alternative, that any worker's compensation insurance policy which excludes coverage of claims brought against an insured, based on LSA-R.S. 23:1361, is invalid and must be reformed to conform with LSA-R.S. 23:1162 to cover the entire liability of the employer. We affirm.

SUMMARY JUDGMENT
A summary judgment is appropriate only if the evidence shows no genuine issue as to any material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966; Mitchell v. Windham, 469 So.2d 381 (La.App. 3rd Cir.1985). This appeal does not concern the issue as to whether or not plaintiff was in fact unlawfully discriminated against by Oilfield. This appeal only involves the question of whether or not, as a matter of law and fact, the worker's compensation insurance policy issued by United General to Oilfield provides coverage for plaintiff's claim, if in fact plaintiff's claim of unlawful discrimination is valid. Consequently, this Court must only determine on this appeal whether or not United General was entitled to judgment on the issue of insurance coverage.

COVERAGE UNDER THE POLICY
Plaintiff first contends that his claim, which is based on LSA-R.S. 23:1361, is covered by the worker's compensation insurance policy issued to Oilfield by United General because the terms of the policy are ambiguous and do not exclude coverage of his claim. In support thereof, plaintiff calls our attention to the following provisions of the policy:

"INSURING AGREEMENTS
I Coverage AWorkmen's Compensation
To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law.
* * * * * *
III Definitions
(a) Workmen's Compensation Law. The unqualified term `workmen's compensation law' means the workmen's compensation law or worker's compensation law and any occupational disease law of a state designated in Item 3 of the declarations, but does not include those provisions of any such law which provide non-occupational disability benefits."
"CONDITIONS
* * * * * *
8. Statutory ProvisionsCoverage A. The company shall be directly and primarily liable to any person entitled to the benefits of the workmen's compensation law under this policy. The obligations of the company may be enforced by such person, or for his benefit by any agency authorized by law, whether against the company alone or jointly with the insured. Bankruptcy or insolvency of the insured or of the insured's estate, or any default of the insured, shall not relieve the company of any of its obligation under coverage A.
As between the employee and the company, notice or knowledge of the injury on the part of the insured shall be notice *215 or knowledge, as the case may be, on the part of the company; the jurisdiction of the insured, for the purposes of the workmen's compensation law, shall be jurisdiction of the company and the company shall in all things be bound by and subject to the findings, judgments, awards, decrees, orders or decisions rendered against the insured in the form and manner provided by such law and within the terms, limitations and provisions of this policy not inconsistent with such law.
All of the provisions of the workmen's compensation law shall be and remain a part of this policy as fully and completely as if written herein, so far as they apply to compensation and other benefits provided by this policy and to special taxes, payments into security or other special funds, and assessments required of or levied against compensation insurance carriers under such law.
The insured shall reimburse the company for any payments required of the company under the workmen's compensation law, in excess of the benefits regularly provided by such law, solely because of injury to (a) any employee by reason of the serious and wilful misconduct of the insured, or (b) any employee employed by the insured in violation of law with the knowledge or acquiescence of the insured or any executive officer thereof."
United General contends that the policy is not ambiguous and clearly excludes coverage for plaintiff's claim, and refers us to the following provision of an endorsement to the policy as support thereof:

"BROAD FORM ALL STATES ENDORSEMENT
* * * * * *
7. The insurance afforded by this endorsement does not cover fines or penalties imposed on the insured for failure to comply with the requirements of any workmen's compensation law." (Emphasis added.)
LSA-R.S. 23:1361, which provides the basis for plaintiff's claim, states in relevant part that:
"A. No person, firm or corporation shall refuse to employ any applicant for employment because of such applicant having asserted a claim for worker's compensation benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Section shall require a person to employ an applicant who does not meet the qualifications of the position sought.
* * * * * *
C. Any person who has been denied employment or discharged from employment in violation of the provisions of this Section shall be entitled to recover from the employer or prospective employer who has violated the provisions of this Section a civil penalty which shall be the equivalent of the amount the employee would have earned but for the discrimination based upon the starting salary of the position sought or the earnings of the employee at the time of the discharge, as the case may be, but not more than one year's earnings, together with a reasonable attorney's fee." (Emphasis added.)
Any ambiguity in an insurance contract will be construed against the insurer and in favor of the insured. Percy v. Safeguard Ins. Co., 460 So.2d 724 (La.App. 3rd Cir. 1984), writ granted, 463 So.2d 596 (La. 1985), case dismissed, 464 So.2d 1366 (La. 1985). Nevertheless, an insurance contract is to be given a fair, reasonable and sensible construction compatible with the apparent object and plain intention of the parties as expressed in words of the agreement. Carlyon v. Aetna Cas. & Sur. Co., 413 So.2d 1355 (La.App. 3rd Cir.1982). The insuring agreement must be read together with applicable exclusions. Southwest La. Grain v. Howard A. Duncan, Inc., 438 So.2d 215 (La.App. 3rd Cir.1983), writs den., 441 So.2d 1224 (La.1983) and 442 So.2d 447 (La.1983). If more than one interpretation of an exclusion is reasonable, the one affording coverage to the insured *216 will be adopted. Lucito v. Louisiana Hospital Service, Inc., 392 So.2d 700 (La.App. 3rd Cir.1980).
Plaintiff argues that under Wiley v. Missouri Pacific R. Co., 430 So.2d 1016 (La. App. 3rd Cir.1982), writ den., 431 So.2d 1055 (La.1983), the liability placed upon a prospective employer who discriminatorily fails to hire a person based on that person's worker's compensation claim history is not a penalty, and that the exclusion relied upon by defendant is therefore inapplicable. In Wiley, this court stated:
"The principal purpose of R.S. 23:1361 is remedial, rather than penal. Remedial and penal statutes are distinguishable in terms of the nature of the evil sought to be remedied by the legislation; it is penal if it undertakes to redress to the public and remedial if it undertakes to remedy a wrong to the individual. 3 Sutherland, Statutory Construction, § 60.03, at 33 (4th ed. Sands, 1974); State v. Boniface, 369 So.2d 115 (La.1979). R.S. 23:1361 was designed to protect individuals from discrimination by virtue of their assertion of legal right.
Inasmuch as R.S. 23:1361 is a remedial statute, it is to be liberally construed to suppress the evil and to advance the remedy. Starks v. Orleans Motors, Inc., 372 F.Supp. 928 (E.D.La.1974). What is a liberal construction is ordinarily one which makes the statutory rule or principle apply in more situations than would be the case under a strict construction. State v. Boniface, supra." Wiley v. Missouri Pacific R. Co., 430 So.2d 1016, at page 1023 (La.App. 3rd Cir.1982), writ den., 431 So.2d 1055 (La.1983).
As can be seen from the quoted language, this Court, in discussing the purpose of LSA-R.S. 23:1361, never stated that the liability imposed upon a violator of the statute was not a civil penalty. LSA-R.S. 23:1361 specifically creates a cause of action and provides that a civil penalty and attorney's fees shall be recoverable from a prospective employer who has violated the statute. Moreover, Section 1361 is not located within that part of the Worker's Compensation Law pertaining to benefits (Part II); rather, it is located within a part of the law dealing with Administration of Claims (Part IV). From this statutory classification it is clear that any damages awarded under Section 1361 is in the form of a civil penalty rather than in the form of compensation and other benefits for disability. Plaintiff contends that his action for employment discrimination, under the Louisiana Worker's Compensation Law, seeks damages which constitute compensation and other benefits under the law and are therefore covered within the meaning of the policy. We reject plaintiff's argument. The compensation and other benefits to which the policy refers are those described under the Insuring Agreements-Coverage A-Workmen's Compensation provision of the policy as "... all compensation and other benefits required of the insured by the workman's compensation law." Under the Louisiana Worker's Compensation Law, the term compensation comprehends three items of loss to the employee which are (1) a sum to partially compensate him for his loss of earning capacity, (2) medical and hospital expenses and related costs, including travel costs, and (3) a sum for the loss of certain limbs or organs, or for disfigurement, without regard to the effect such loss may have upon his earning capacity. Malone and Johnson, 13 Louisiana Civil Law Treatise, 2nd Ed. Worker's Compensation, Sec. 271, p. 594. Civil penalties are not within the plain and ordinary meaning of the words "compensation and other benefits." In construing the terms and provision of this policy in their general and popular meaning, we find no ambiguity in the policy which would afford construction of the policy in favor of providing coverage for plaintiff's claim. Percy v. Safeguard Ins. Co., supra. Consequently, we find that the exclusion in the worker's compensation insurance policy issued by United General to Oilfield excludes coverage for plaintiff's claim for the civil penalty and attorney's fees provided for by LSA-R.S. 23:1361(C), the section under which plaintiff brings his claim.
*217 Plaintiff also argues that the portion of the policy provision quoted earlier which states:
"The insured shall reimburse the company for any payments required of the company under the workmen's compensation law, in excess of the benefits regularly provided by such law, solely because of injury to (a) any employee by reason of the serious and wilful misconduct of the insured, or (b) any employee employed by the insured in violation of law with the knowledge or acquiescence of the insured or any executive officer thereof."
should be extended by analogy to cases where prospective employees are denied employment in violation of law. Plaintiff argues that if Oilfield is liable to United General for such payments made on its behalf under this provision of the policy that the payment of the amounts sought by the plaintiff in his suit is not excluded under the policy. We have not been cited to any legal authority to permit such jurisprudential extension of the terms of the policy nor do we see any reason for such an extension by analogy to provide coverage for Oilfield's liability based upon Oilfield's alleged unlawful discriminatory employment practices.

VALIDITY OF POLICY UNDER LSA-R.S. 23:1162
Plaintiff alternatively contends that a worker's compensation insurance policy which excludes coverage for claims brought against the insured, based on LSA-R.S. 23:1361, is invalid under LSA-R.S. 23:1162, which provides in relevant part the following:
"A. No policy of insurance against liability arising under this Chapter shall be issued unless it contains the agreement of the insurer that it will promptly pay to the person entitled to compensation all installments of the compensation that may be awarded or agreed upon, and that this obligation shall not be affected by any default of the insured after the injury, or by any default in the giving of any notice required by such policy, or otherwise. This agreement shall be construed to be a direct obligation by the insurer to the person entitled to compensation, enforceable in his name. No policy of insurance against liability under this Chapter shall be made unless the policy covers the entire liability of the employer; provided, that as to the question of the liability as between the employer and the insurer the terms of the insurance contract shall govern, and provide, further, that a contract of indemnity may be issued to an employer qualified as a self-insured under this Chapter, by which contract an insurer may undertake to indemnify such employer against loss or losses arising with respect to his obligations under this Chapter in excess of a stated or determinable amount." (Emphasis added.)
Plaintiff argues that since the liability imposed upon a prospective employer by Section 1361 is a liability under the Louisiana Worker's Compensation Law, Section 1162 mandates coverage of this liability under any worker's compensation insurance policy issued in the State of Louisiana.
It is clear that LSA-R.S. 23:1162 is a "full coverage" statute by reasons of which the liability of the insurer is co-extensive with that of the insured employer under the Louisiana Worker's Compensation Law. Babineaux v. Southeastern Drilling Corporation, 170 So.2d 518 (La. App. 3rd Cir.1965), writs den., 247 La. 613, 614, 615, 172 So.2d 700 (1965), appeal dismissed, 382 U.S. 16, 86 S.Ct. 67, 15 L.Ed.2d 12 (1965). Under Section 1162, the worker is provided protection, superior to the insurance contract rights between the employer and its insurer, and the right to recovery overrides any limitation if the employee is, as a factual matter, entitled to recover. Armstrong v. Land & Marine Applicators, 463 So.2d 1331 (La.App. 5th Cir.1984), writs den., 466 So.2d 1299, 1307 (La.1985).
Plaintiff has cited several cases that he claims support his position that Section 1162 mandates insurance coverage for his *218 claim of discrimination brought under Section 1361. In Pierson v. Aetna Casualty & Surety Company, 184 So.2d 572 (La. App. 1st Cir.1966), the First Circuit Court of Appeal held that under LSA-R.S. 23:1162, a provision in a worker's compensation insurance policy issued to a partnership which excluded the partners from coverage was of no force or effect as against third party plaintiffs who filed third party demands against the insurer to recover any amounts of compensation that they might ultimately have to pay if they were held to be the employer of the partners. In Babineaux v. Southeastern Drilling Corporation, supra, this Court held that a worker's compensation insurance policy which limited coverage to accidents occurring within the United States or its coastal waters would be construed under LSA-R.S. 23:1162 as covering all compensation owed by the insured. These cases are distinguishable in that both cases involved suits for worker's compensation and other benefits rather than suits for civil penalties under the Louisiana Worker's Compensation Law.
Plaintiff has not cited, nor have we been able to find any cases wherein a Louisiana Court has been called upon to decide whether a policy provision which excludes coverage for claims for civil penalties, brought under LSA-R.S. 23:1361, is invalid under LSA-R.S. 23:1162. This question appears to be res nova in Louisiana.
United General contends that the Louisiana Legislature did not intend Section 1162 to prohibit an insured from excluding coverage for liability under Section 1361. In 1983, the Legislature amended LSA-R.S. 23:1201, to change the law in regard to who is to pay penalties for late payments of compensation benefits, so that it now states that:
"The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay. No worker's compensation insurance policy shall provide that this sum shall be paid by the insurer if the director or the court determines that the twelve percent additional payment is to be made by the employer rather than the insurer."
Although the present case does not involve a penalty assessed under Section 1201, the 1983 amendment to this section does indicate that the Legislature distinguishes between the employer and its insurer paying civil penalties provided for by the Louisiana Worker's Compensation Law. This Court is certainly cognizant of a good reason for such a distinction. An employer who causes delay in the payment of benefits, which are due to an employee, commits an intentional and voluntary act just as a failure to hire a person due to that person's worker's compensation claim history is an intentional and voluntary act on the part of an employer. It is a longstanding principle of public policy that no person can insure against his own intentional acts. Baltzar v. Williams, 254 So.2d 470 (La. App. 3rd Cir.1971); Swindle v. Haughton Wood Co., Inc., 458 So.2d 992 (La.App. 2nd Cir.1984). Some compensation statutes even go so far as to expressly prevent an employer from insuring against liability for penalties and payments owed because of discrimination against an employee and void any provision of an insurance policy seeking to relieve the employer from such liability. See e.g. 33 U.S.C.A. Sec. 948a, Longshoremen's & Harbor Worker's Compensation Act.
United General has referred us in brief and oral argument to an Illinois case for guidance in rendering our decision. This case, Rubenstein Lumber Co. v. Aetna Life & Cas. Co., 122 Ill.App.3d 717, 78 Ill.Dec. 541, 462 N.E.2d 660 (1984) presents facts unlike that of the present case in that the Illinois Court was faced with a retaliatory discharge action brought under the Illinois Worker's Compensation Act. Nevertheless, we quote with approval the following language from this Illinois case which states that:
"Moreover, even if the policy was written to expressly require defendant to defend and indemnify plaintiff in the retaliatory discharge action, we believe that such a *219 provision would be void as against public policy, for it would be an attempt to indemnify and insure the company for damages resulting from its voluntary misconduct. An agreement to indemnify or insure against one's voluntary, not accidental, misconduct is against public policy and unenforceable." Rubenstein Lumber Co. v. Aetna Life & Cas. Co., 122 Ill.App.3d 717, 78 Ill.Dec. 541, at page 543, 462 N.E.2d 660, at page 662 (1984).
We also note that the Exclusion 8 of United General's policy previously quoted required Oilfield to reimburse it for any payments it was required to make under any worker's compensation law because of the willful misconduct of Oilfield. This exclusion also evidences that United General did not intend to insure Oilfield for its intentional acts such as plaintiff alleges Oilfield committed in discriminating against him in employment.
For these reasons we find that the provision in the worker's compensation insurance policy issued by United General to Oilfield that excludes coverage for plaintiff's action for civil penalties and attorney's fees, brought under LSA-R.S. 23:1361, for discrimination in employment is not invalid, under LSA-R.S. 23:1162, for the reason that it would be against public policy to allow an employer to obtain insurance coverage for its voluntary and intentional wrongful acts.
The judgment appealed from is hereby affirmed. Costs of this appeal are to be paid by plaintiff-appellant.
AFFIRMED.